# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EZFAUXDECOR, LLC, et al., | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) Case No. 15-9140 |
| APPLIANCE ART INCORPORATED, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs Ezfauxdecor, LLC, and Amber Shank filed the instant lawsuit against defendants Appliance Art Incorporated, Instant One Media, Inc., Alison Smith, and Easy Home Renewals,[1] alleging the following: false advertising and unfair competition; tortious interference with contract; commercial disparagement and unfair competition; declaration of trademark rights pursuant to 28 U.S.C. § 2201; and cancelation of trademark registrations. (Doc. 1.) This matter is before the court on Appliance Art Incorporated, Instant One Media, Inc., and Alison Smith's Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 14, 16, and 18). For the reasons set forth below, the court finds it has personal jurisdiction over these defendants.

### I. FACTUAL BACKGROUND

Plaintiffs and defendants market and sell competing self-adhesive films imprinted with patterns of stainless steel, marble, and granite, which are used to cover existing appliances and countertops ("Products"). Plaintiffs allege that beginning in 2003, plaintiff Shank began marketing and distributing the Products. Plaintiffs allege that, since 2003, plaintiff Shank has had a common law right to use the

---

[1] Plaintiffs allege that Easy Home Renewals sells products manufactured and distributed by defendant Appliance Art Incorporated on Amazon.com.

-1-

trademarks "instant stainless," "instant stainless steel," and "instant granite" in connection with selling the Products. In 2012, plaintiff Shank assigned her rights in the Products to Ezfauxdecor, LLC, which has since marketed and distributed the Products utilizing its registered trademark "EZFauxDecor."

Defendants also market and distribute the Products under the registered trademarks "Instant Granite" and "Instant Stainless." Both plaintiffs and defendants advertise and sell the Products in commerce to retail resellers and ultimate end-users.

Plaintiffs claim defendants introduced their competing Products into the marketplace by making representations in their advertising and promotional presentations and on their internet pages that are false, misleading, and have a tendency to deceive consumers purchasing either plaintiffs' or defendants' Products. As one example, plaintiffs claim that defendants have posted on their internet pages screen shots from a November 9, 2011, Rachel Ray television show that featured plaintiffs' Products, intending that potential customers believe either that it was defendants' Products featured on the show or that defendants are selling plaintiffs' Products.

Plaintiffs also allege that defendants have made false statements directly to plaintiffs' potential customers and to Amazon.com, resulting in interference with plaintiffs' contractual relations. Plaintiffs claim that defendants' false statements to Amazon.com caused Amazon.com to suspend plaintiffs' seller pages. Plaintiffs allege that defendants' statements and actions have damaged plaintiffs' business reputation and goodwill.

## II. LEGAL STANDARD

Plaintiff has the burden to establish personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court assumes the allegations in the complaint are true to the extent they are not controverted, and all factual disputes are resolved in plaintiffs' favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

In federal diversity cases, the court's jurisdiction over a defendant depends on the law of the forum state. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). The district court must determine 1) whether the defendants' conduct falls within the forum state's long-arm statute, and 2) whether the exercise of personal jurisdiction over the defendants satisfies the constitutional guarantee of due process. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2008)). Because Kansas courts construe the long-arm statute to the same limits allowed by federal due process, the court proceeds directly to the due process inquiry. *OMI*, 149 F.3d at 1090.

Analyzing due process is a two-step inquiry. First, the court must determine whether the defendants have minimum contacts with the forum state such that the defendants "should reasonably anticipate being haled into court there." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quoting *OMI*, 149 F.3d at 1091). Second, assuming those minimum contacts exist, the defendants' contacts must be such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

## III. DISCUSSION

Plaintiffs argue that defendants have made substantial sales of the Products to Kansas residents through defendants' websites and Amazon.com seller pages. While defendants admit to sales in Kansas, defendants claim that the percentage of their sales to Kansas residents is insufficient to satisfy minimum contacts. However, the court need not address whether the percentage of defendants' overall sales to Kansas residents is sufficient by itself, because those sales, along with defendants' alleged tortious activities aimed directly at plaintiffs, are enough to satisfy minimum contacts.

### A. Minimum Contacts

Recently, in *Walden v. Fiore*, the Supreme Court explained the minimum-contacts analysis as it relates to specific jurisdiction. 134 S. Ct. 1115 (2014). Due process permits specific jurisdiction over a nonresident defendant where that defendant's suit-related conduct creates a substantial connection with the forum state. *Id.* at 1121. In the Tenth Circuit, a court has specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Tenth Circuit explained how to evaluate whether a defendant purposefully directed his activities at the forum:

> In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.

*Dudnikov*, 514 F.3d at 1071 (internal citations omitted). The court turns to whether defendants purposefully directed their activities at Kansas.

Plaintiffs argue this court has specific jurisdiction over defendants because defendants committed tortious acts directed at Kansas. In this context, plaintiffs must make a prima facie showing that defendants "(1) intentionally acted, (2) in a manner expressly aimed at Kansas, with (3) knowledge that the brunt of the injury would be felt in Kansas." *Proud Veterans LLC v. Ben-Menashe*, No. 12-CV-1126-JAR, 2014 WL 791200, at *6 (D. Kan. Feb. 27, 2014). "The mere allegation that an out-of-state defendant has . . . committed [] business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum

-4-

contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Rather, the court must evaluate the quantity and quality of defendants' contacts with the state. *OMI*, 149 F.3d at 1092.

Here, plaintiffs allege that defendants posted false advertising and false statements concerning their Products and plaintiffs' Products, intending specific harm to plaintiffs by diverting sales from plaintiffs' business to themselves. Notably, even before these alleged postings occurred, plaintiffs allege that Grant Smith called plaintiff Shank on October 13, 2010, to discuss her business, and he sent plaintiff Shank an email, in which he acknowledged plaintiff Shank's appearance on QVC and HGTV. At the time, Grant Smith was the sole owner and chief executive officer of defendant Appliance Art Incorporated.[2] Then, in December 2010, Grant Smith traveled to Kansas and met plaintiff Shank at her home in Overland Park, Kansas, to discuss a potential partnership to sell the Products. Plaintiff Shank rejected Grant Smith's proposal.

In addition to Grant Smith's call, email, and visit to plaintiff Shank in Kansas regarding a partnership to sell the Products, the court also finds significant the fact that on April 1, 2013, defendants sent plaintiff Shank a cease and desist letter (via first-class mail and email) to her Overland Park, Kansas residence, demanding that plaintiffs stop using "Instant Stainless" and "Instant Chalkboard" and threatening to sue plaintiffs under the Lanham Act. (Doc. 15-4.) Even more significant to the court is that on August 1, 2013, defendants sent a letter (via first-class mail) to the Amazon.com legal department, claiming that the seller using the screen name "EZFAUXDECOR" and "EZFAUX FINISHINGS" was falsely selling its products. (Doc. 15-5 at 1.) Defendants made demand upon Amazon.com that "all infringing uses by EZFAUXDECOR and EZFAUX FINISHINGS be deleted or otherwise restricted from sale." (*Id.* at 4.) Amazon.com thereafter suspended plaintiffs' seller pages on Amazon.com. Plaintiffs claim they suffered damages as a result.

---

[2] After Grant Smith's death in 2014, defendant Alison Smith assumed the roles of chief executive officer, chief financial officer, and secretary for defendant Appliance Art Incorporated. On July 15, 2014, Appliance Art Incorporated transferred all of its assets (but for the trademarks at issue) to defendant Instant One Media, Inc.

As previously mentioned, the mere allegation that an out-of-state defendant has committed business torts that have allegedly injured a resident of the forum "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital*, 46 F.3d at 1077–80. "Something more" is needed to establish minimum contacts with Kansas. *Toytrackerz LLC v. Koehler*, No. CIV.A. 08-2297-GLR, 2009 WL 1505705, at *17 (D. Kan. May 28, 2009). In this case, plaintiffs have established "something more" by alleging that defendants falsely advertised, marketed, and sold infringing products to Kansas residents; Grant Smith communicated with plaintiff Shank in 2010 and traveled to Kansas to discuss a potential partnership to sell the Products; defendants directed communications to plaintiffs in Kansas, threatening to sue plaintiffs over plaintiffs' advertising, marketing, and sale of the Products; and defendants sent a letter to Amazon.com, demanding that Amazon.com delete or restrict "EZFAUXDECOR" from selling the Products. The court finds plaintiffs sufficiently allege that defendants acted intentionally, in a manner expressly aimed at Kansas, and knowing that the brunt of the injury would be felt in Kansas. *See Proud Veterans*, 2014 WL 791200, at *6. The minimum contacts requirement is satisfied.

### B. Fair Play and Substantial Justice

The court next turns to whether subjecting defendants to jurisdiction in Kansas would offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316. At this point, the burden shifts to defendants to show this court's exercise of personal jurisdiction would be unreasonable. *Dudnikov*, 514 F.3d at 1080. The court considers the following factors: "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies." *Id.* (quoting *OMI*, 149 F.3d at 1095–96). The

weaker the minimum contacts, the less unreasonableness a defendant need show. *Trujillo*, 465 F.3d at 1221. The court turns to the five factors.

First, defendants are located in Georgia. To defend a suit in Kansas will create a burden to defendants; however, modern transportation and communication have to some extent lessened the burden to out-of-state defendants. Notwithstanding, this factor weighs in favor of defendants.

Second, the court considers the interest of Kansas in resolving the dispute. The states have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. *OMI Holdings*, 149 F.3d at 1096. In this case, the court finds that Kansas has a strong interest in adjudicating this controversy because the alleged injury was suffered by Kansas residents in the state of Kansas. Kansas also has a significant interest in resolving a dispute regarding the rights to trademarks used by Kansas residents. *Toytrackerz*, 2009 WL 1505705, at *18. This factor weighs in favor of plaintiffs.

Third, the court considers whether plaintiffs may receive convenient and effective relief in another forum. *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005). Sometimes the burden to litigate in another state may be so overwhelming as to practically foreclose pursuit of the lawsuit. With respect to this factor, the court finds that plaintiffs are unlikely to receive convenient and effective relief in another forum. Plaintiff Shank is the sole owner and sole full-time employee of EZFAUXDECOR, LLC. As represented by plaintiffs, plaintiff Shank would have to shut down the business each time she had to leave Kansas to pursue this litigation, and that burden would be "catastrophic" to plaintiffs' business. (Doc. 29 at 25.) This factor weighs in favor of plaintiffs.

Fourth, the court considers whether Kansas is the most efficient place to litigate the parties' dispute. Defendants argue it would be more efficient to litigate the case in Georgia and that there are essential witnesses who are Georgia residents. However, plaintiffs are located in Kansas, and other

witnesses, such as witnesses from Amazon.com, are likely located in other jurisdictions around the country. This factor is neutral.

The fifth factor focuses on whether the exercise of personal jurisdiction by the forum affects the "substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097. The court finds no facts suggesting that the exercise of personal jurisdiction in Kansas would affect the substantive social policy of any other state. This factor weighs in favor of plaintiffs.

The court finds that exercising personal jurisdiction over defendants would not offend traditional notions of fair play and substantial justice. Accordingly, the court will not dismiss the action for lack of personal jurisdiction over these defendants.

**IT IS THEREFORE ORDERED** that Appliance Art Incorporated, Instant One Media, Inc., Alison Smith's Motions to Dismiss for Lack of Personal Jurisdiction (Doc. 14, 16, and 18) are denied.

Dated this 17th day of February, 2016, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**
