## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EZFAUXDECOR, LLC, *et al.*,      )
                                 )
                    Plaintiffs,  )
                                 )
                                 )    Case No. 15-9140-CM-KGG
                                 )
v.                               )
                                 )
ALISON SMITH, *et al.*,          )
                                 )
                    Defendants.  )
_____  )

## ORDER ON PENDING MOTIONS

Now before the Court are the parties' dueling motions requesting the entry of a Protective Order (Docs. 81, 83) as well as the parties' dueling motions regarding an ESI protocol for the case (Docs. 87, 88).  For the reasons set forth herein, Defendants' motion for a Protective Order (Doc 81) is **DENIED** and Plaintiffs' competing motion (Doc. 83) is **GRANTED**.  The parties' competing motions for an ESI protocol (Docs. 87, 88) are **GRANTED in part** and **DENIED in part** as more fully set forth below.

Also pending is Defendants' motion for extension of time to file a motion to compel, to which Plaintiffs filed no response.  (Doc. 98.)  This motion is

**GRANTED** as uncontested.[1]

## BACKGROUND

The parties in this lawsuit are competing on-line retailers selling adhesive coverings for household appliances and countertops.  (*See* Doc. 86, at 1-2.) Plaintiffs bring claims against Defendants for false advertising, tortious interference with business relations, commercial disparagement, and false or fraudulent trademark registration.  (*See generally* Doc. 96.)  Additionally, Plaintiffs seek a cancellation of Defendants' trademark registrations and request a declaratory judgment "of its continued right to use the phrases 'instant stainless,' 'instant stainless steel,' and 'instant granite,' as such or in combination with other words to describe Plaintiffs' products, all free and clear of interference or harassment by Defendants and without any obligation or liability to Defendants." (*Id.*, at 13-18.)

Currently pending before the Court are the parties competing motions, enumerated *supra*.  The motions will be addressed by subject matter.

## DISCUSSION

**1.    Defendants' Motion for Protective Order (Doc. 81) and Plaintiffs' Motion for Protective Order (Doc. 83).**

---

[1]  *See* D. Kan. Rule 6.1(d)(1), D. Kan. 7.4.

The parties agree that a Protective Order is necessary in this case, but have been unable to agree on its particulars.  Because the parties are competitors in a "small market segment" (Doc. 82, at 13), Defendants request two-tiered protection, which would include a second level of protection for documents designated "attorneys' eyes only."  This would be reserved for customer-identifying information, vendor information, and private financial information.  (*Id.*, at 12.)

Defendants also request additional protections to "reduce the risk that documents designated Attorneys' Eyes Only may be disclosed to Plaintiffs again." (*Id.*, at 14.)

> Defendants' protective order in Exhibit A would require Defendants to produce financial summaries of confidential financial information (designated "Attorneys' Eyes Only"), without having to produce it in its full, native format. Plaintiffs' counsel would be permitted to verify the accuracy of this summarized information by inspecting Defendants' private financial records in their full, native form, but Plaintiffs' counsel will not have unrestricted access to, or a permanent copy of, such financial information in its full, native format. ("Measure (3)") In the alternative to Measure (3), Defendants' proposed protective order in Exhibit B would permit the withholding of their confidential financial information in native format until thirty (30) days prior to the proposed Pretrial Order deadline ("Measure (4)").

(*Id.*, at 14-15.)  Defendants provide examples of events that justify this type of protection, including an instance when Plaintiffs' counsel allegedly showed

3

Plaintiff certain documents marked "Confidential – Counsel Eyes Only" pursuant to a pre-mediation agreement.  (*Id*., at 15.)

Plaintiffs contend that the protections proposed by Defendants go beyond any that have been allowed in this District or the Tenth Circuit as a whole and "would prevent a plaintiff in a Lanham Act unfair competition case from obtaining evidence required by statute and necessary to the elements of their claim."  (Doc. 86, at 1.)  Plaintiffs object to three aspects of Defendants' proposed Orders:

1. Prohibiting necessary experts from viewing customer information.

2. Permitting Defendants to merely show financial information to the Plaintiffs in lieu of producing the requested financial information and prohibiting experts from viewing the financial information. (Dft's Measure 3)

3. Permitting Defendants to withhold financial information until 30 days before trial and after the deadline for designating experts has run.  (Dft's Measure 4)

(Doc. 86, at 13.)  Plaintiffs have filed a competing Motion for Protective Order (Doc. 83; section 2, *infra*).

Plaintiffs propose using the model Protective Order available from the Court's website.  (*See* Doc. 84, at 2.)  Plaintiffs propose two "specific and narrow categories of information" to be protected:

4

(a)     Documents or records containing financial
        information about a party;

(b)     Documents or records containing customer names,
        phone numbers, addresses, email addresses, or
        credit card information.

(*Id.*)  Plaintiffs contend that they will need to have the identities of, and obtain

testimony from, Defendants' customers to prove damages.  (*Id.*, at 3.)

Defendants respond that

> Plaintiffs' proposal affords only a single designation of
> confidentiality that would allow the parties to access and
> possess each other's trade secrets, including, for instance,
> customer identities, profit margins, and vendors. The
> disclosure of that information would provide Plaintiffs
> with an unfair competitive advantage to the damage of
> Defendants.

(Doc. 89, at 2.)  According to Defendants, the two-tiered Protective Order they

proposed (*see* section 1, supra) "would enhance protection to discrete categories of

information that constitute trade secrets."  (*Id.*)

"The court has broad discretion 'to decide when a protective order is

appropriate and what degree of protection is required.'"  **MGP Ingredients, Inc. v.**

**Mars, Inc.**, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting **Seattle Times Co. v.**

**Rhinehart**, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)); *see also*

**Layne Christensen Co. v. Purolite Co**., 271 F.R.D. 240, 244 (D. Kan. 2010).

Additionally, "a court may be as inventive as the necessities of a particular case

5

require" in fashioning an appropriate protective order.  8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2036, at 489 (2d ed.1994).

The law requires that the proposed protection be balanced between the confidentiality concerns/potential injury to Defendants versus the need for Plaintiffs to be able to prosecute its case.

> Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel . . . , the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.
>
> In weighing these competing interests, the court should consider whether the individual to be prohibited from accessing the information would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage.  The court should also consider whether prohibiting the individual's access to the information would hamper the party's ability to assess the merits of the litigation.  This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation.

*Layne Christensen Co.*, 271 F.R.D. at 249-50 (internal citations omitted).

The Court finds that Plaintiffs' approach strikes the appropriate balance.  It

6

would be virtually impossible for Plaintiffs to prosecute this sort of action if they were prohibited from seeing the relevant financial information and their expert was prohibited from seeing the customer information.

The Court thus approves Plaintiffs' proposed Protective Order, **GRANTING** Plaintiffs' motion (Doc. 83) and **DENYING** Defendants' motion (Doc. 81). The Court will, however, amend Plaintiffs' proposed Protective Order to restrict the limitation of customer information to attorneys and experts only.

**2.    Defendants' Motion to Adopt Defendants' ESI Protocol (Doc. 87) and Plaintiffs' Motion to Adopt ESI Plan (Doc. 88).**

Defendants request that the Court "issue its protocol governing the form and manner of electronically stored information ("ESI") during the course of litigation. (Doc. 87, at 1.) The parties have discussed this issue but disagree on the following issues:

1.    Categories of ESI most relevant to parties' claims or defenses (paragraph 4). (Doc. 87, at 2.)

2.    Third-parties likely to have relevant ESI (paragraph 6). Defendants want to include the statement that such ESI is "not relevant or may be disproportionate to the needs of the case." (Doc. 87, at 2.)

3.    Third-party web pages (paragraphs 13 and 15). Defendants contend that some of this information may no longer exist or may not be Defendants' control. According to Defendants, "[i]t is not

7

technologically feasible to preserve them in the manner Plaintiffs have identified.  Requiring forensic reconstruction of historical versions of web pages would be wildly out of proportion to the issues and amount at stake in this case." (Doc. 87, at 2.)

4.    Structured data in report format (paragraph 16).  According to Defendants, Plaintiffs propose that if the exchange of this type of information is insufficient, "the parties would be required to identify the databases or systems incorporating databases that will require raw data production." (Doc. 87, at 3.)  Defendants suggest that if that occurs, "the parties negotiate in good faith about the reasonable methods of production and in a manner that is proportional to the needs of the case." (*Id.*)

5.    Language regarding improper dissemination of information (paragraph 18).  Defendants contend that this is "important" because of "the issues discussed in the Defendants' Motion for Protective Order . . . ." (Doc. 87, at 3.)

6.    Attachments to e-mails (paragraph 22).  Defendants propose that attachments "shall not be eliminated from the parent e-mail" except as a result of privilege.  (Doc. 87, at 3.)

Plaintiffs have filed a competing motion relating to ESI.  (Doc. 88.)

Plaintiffs contend their proposed ESI plan is more consistent with the Sedona

Conference than Defendants' proposal.  (Doc. 88, at 1-2.)  According to Plaintiffs,

[t]he core of the disagreements between Plaintiffs and Defendants is that Defendants' proposals mix matters

8

> more appropriate to a protective order with the limited
> scope of a [sic] ESI plan.  An ESI plan concerns the
> format of production – a protective order concerns the
> limits to production or dissemination of material.

(*Id.*, at 2.)  Plaintiffs also complain that "Defendants had a duty to preserve their own websites and seller's pages," which is "common in litigation."  (*Id.*)  They contend that they have not sought the production of third-party websites "except for the content to which Defendants linked their own websites."  (*Id.*)

The Court finds that the elements to which the parties have agreed create the structure for an appropriate ESI protocol.  The protective order-type elements of Defendants' proposal do not belong in an ESI protocol.  The parties are thus instructed to jointly compose a revised ESI protocol adhering to the elements on which they have expressed agreement in their respective motions.  To the extent additional elements proposed by either party are excluded by this Order, such is without prejudice to revisiting these as they may relate to specific discovery.  The proposed, jointly composed protocol shall be submitted to the Court for approval within **thirty (30) days** of the date of this Order.

The Court also mandates the following revisions or additions to the protocol.  As discussed in paragraph 4 of Defendants' motion,

> Plaintiffs propose that if issues in the case make
> exchange of structured data in a report format
> insufficient, the parties would be required to identify the

> databases or systems incorporating databases that will
> require raw data production.  Conversely, Defendants
> suggest that in that event, the parties negotiate in good
> faith about the reasonable methods of production and in a
> manner that is proportional to the needs of the case.

(Doc. 87, at 3.)  The Court finds that these concepts proposed by Defendantshould

be incorporated.  Further, Defendants' proposal that attachments to e-mails shall

not be eliminated from the parent e-mail (except to the extent that they are subject

to withholding for privilege, work product, or a similar protection) shall be

included in the protocol.

**IT IS THEREFORE ORDERED** that Defendants' motion for a Protective

Order (Doc 81) is **DENIED** and Plaintiffs' competing motion (Doc. 83) is

**GRANTED**.

**IT IS FURTHER ORDERED** that the parties' motions for an ESI protocol

(Docs. 87, 88) are **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS FURTHER ORDERED** that Defendants' motion to extend their

deadline to file a motion to compel Plaintiffs' responses to Defendants' first

discovery requests is **GRANTED** as uncontested.  Therefore, any such discovery

motion relating to Plaintiffs' responses to Defendants' first discovery requests shall

be filed within **sixty (60) days** of the date of this Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 6th day of March, 2017.

         S/ KENNETH G. GALE
         KENNETH G. GALE
         United States Magistrate Judge