# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EZFAUXDECOR, LLC, *et al.*,    ) | |
|               ) | |
|      Plaintiffs,   ) | |
|               ) | Case No. 15-9140-CM-KGG |
| v.               ) | |
| ALISON SMITH, *et al.*,   ) | |
|      Defendants. ) | |

## MEMORANDUM & ORDER

The parties' competing motions regarding the adoption of an ESI protocol are currently pending before the Court in the above-captioned matter. (Docs. 119, 122.) For the reasons set forth herein, Plaintiffs' Motion Regarding the ESI Protocol (Doc. 119) is **GRANTED in part** and **DENIED in part** while Defendants' Second Motion to Adopt ESI Protocol (Doc. 122) is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The parties in this lawsuit are competing on-line retailers selling adhesive coverings for household appliances and countertops. (*See* Doc. 86, at 1-2.) Plaintiffs bring claims against Defendants for false advertising, tortious

interference with business relations, commercial disparagement, and false or

fraudulent trademark registration. (*See generally* Doc. 96.) Additionally, Plaintiffs

seek a cancellation of Defendants' trademark registrations and request a

declaratory judgment "of its continued right to use the phrases 'instant stainless,'

'instant stainless steel,' and 'instant granite,' as such or in combination with other

words to describe Plaintiffs' products, all free and clear of interference or

harassment by Defendants and without any obligation or liability to Defendants."

(*Id*., at 13-18.)

The parties previously filed dueling motions requesting an ESI protocol

(Docs. 87, 88). While they agreed about most of the elements, six issues relating

to Defendants' proposed protocol were identified. (*See* Doc. 104, at 7-8.)

Plaintiffs argued that their proposal was more consistent with the Sedona

Conference than Defendants' proposal. (Doc. 88, at 1-2.) Plaintiffs' main

problems with Defendants' proposal was that it mixed "matters more appropriate

to a protective order with the limited scope of a [sic] ESI plan. An ESI plan

concerns the format of production – a protective order concerns the limits to

production or dissemination of material." (*Id*., at 2.)

This Court's prior Order on the issue stated that "the elements to which the

parties have agreed create the structure for an appropriate ESI protocol." (Doc.

104, at 9.)   The Court also stated that "[t]he protective order-type elements of

Defendants' proposal do not belong in an ESI protocol."  (*Id.*)  The parties were

directed to "to jointly compose a revised ESI protocol adhering to the elements on

which they have expressed agreement in their respective motions" within 30 days.

(*Id.*)  The Court concluded by holding that additional elements proposed by either

party were excluded by the Order, without prejudice to revisiting these as they may

relate to specific discovery.  (*Id.*)

The parties' efforts to draft an agreed protocol were unsuccessful and they

subsequently (and timely) submitted an additional round of competing ESI

protocols.  (Docs. 119, 122.)  Plaintiffs' motion indicates that the attached protocol

was agreed upon "with the exception of Paragraphs 8 and 9 which concern the

format for the production of financial information and websites/webpages."  (Doc.

119, at 1.)

**ANALYSIS**

**A.     Paragraph 8.**

According to Plaintiffs,

> [t]he only difference between the parties' versions of
> paragraph 8 is that the Plaintiffs' version identifies the
> accounting programs of Defendant as a database system
> that requires native format production. Defendants
> acknowledge they use QuickBooks as their accounting
> system. This is the only financial database from which

the Plaintiffs have requested native format production.

(Doc. 119, at 2.)  Plaintiffs argue that the QuickBooks file is the only native format

financial information requested and doing so imposes "virtually no burden" to

either party.  (*Id*., at 3-4.)

Plaintiffs also contend that Defendants' objection to this is improper because

goes to the content of what is produced, rather than the format of the production.

(*Id*., at 4-5.)  According to Plaintiffs, "[w]ithout the underlying financial data,

Plaintiffs would have no way of disputing the cost offsets claimed by the

Defendants and demonstrating that the claimed offsets do not apply to the sales

generated by the false advertising."  (*Id*., at 5.)

Finally, Plaintiffs contend that the production of the QuickBooks file would

potentially allow the parties to withdraw certain other discovery requests (*i.e.*

requesting bank statements) which were necessitated by Defendants' refusal to

produce the QuickBooks file.  (*Id*.)

Defendants argue that "the QuickBooks file contains information regarding

sales and costs of products not at issue in this lawsuit and would subject

Defendants to costly, error-prone efforts to redact irrelevant information."  (Doc.

122, at 2.)  As such, Defendants propose that the parties produce their financial

information "in native-format Excel spreadsheets or a comparable form of

electronic report – not 'paper reports,' and not 'unilaterally,' as Plaintiffs argue."

(*Id.*)

Defendants contend that releasing their entire financial status to Plaintiffs –

including as to non-relevant products – would put them at a competitive

disadvantage. (*Id.*, at 3.) Further, "[c]reating a native-format QuickBooks file

containing only the sales and cost information relating to the two product lines at

issue in this lawsuit file would impose an undue burden on Defendants, and the

process of separating out" only the relevant native-format Quickbooks data would

be "costly and potentially error-prone." (*Id.*) Defendants argue that Paragraph 12

of the protocol, to which the parties have agreed, contains the necessary provisions

regarding the production of structured financial data (in Excel spreadsheet format).

The Court agrees with Defendants that production of the documents in

QuickBooks format is improper because it would include the production of a

significant amount of information that is thoroughly irrelevant to this case.

Therefore, the financial information shall be produced in native-format Excel

spreadsheets or a comparable form of electronic report, as proposed by Defendants.

Defendants are, however, instructed to preserve all of this information in its native

QuickBooks format. The Court is willing revisit the issue of producing the

information in QuickBooks format upon a showing of good cause by Plaintiffs that

the Excel spreadsheets or comparable electronic report(s) are insufficient.

**B.     Paragraph 9.**

The disagreement regarding this paragraph concerns the format of production of websites and webpages.  "Plaintiffs maintain that Defendants must produce working, functional copies of their websites/webpages. Defendants maintain that they will only produce static images converted to single page pdf format."  (Doc. 119, at 5.)

Plaintiffs contend that Defendants were aware of the duty to preserve the web-information by sending a litigation hold letter to Plaintiffs on July 28, 2015. (*Id*., at 6.)  The letter specifically stated that "Paper Preservation of ESI is inadequate.  As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms."  (*Id*.)  Plaintiffs argue they are simply trying to hold Defendants to this same standard.  (*Id*., at 7.)  Plaintiffs also argue that production of functional copies of the websites is appropriate, common in litigation, and imposes little burden.  (*Id*.)

Defendants state that Plaintiffs have failed to articulate a basis for requiring native, fully functional versions of the websites.  (Doc. 122, at 5.)  They disagree

with Plaintiffs' "assertions that not preserving 'functional electronic copies' of webpages is a *per se* breach of the duty of preservation. The duty to preserve information attaches to the information itself, and not the particular form or format of that information." (*Id*.)

Defendants continue that "[t]he only issues in a Lanham Act false-advertising/unfair-competition case are whether Defendants (and Plaintiffs) made false or misleading statements that were likely to deceive the public about their products." (*Id*., at 6.) In Defendants' opinion, only the "visible content" of the parties webpages and third-party web listings "is relevant to the claims asserted in this case, and that is the only content to which any preservation duty attaches." (*Id*.) Thus, according to Defendants, "the duty to preserve HTML code or other underlying webpage metadata never arose." (*Id*.) Defendants rely on the latest version of *The Sedona Principles*, which states that "it is unreasonable to expect parties to take every conceivable step or disproportionate steps to preserve each instance of relevant electronically stored information." *The Sedona Principles* § 5 (3d ed. 2017, public comment version) (emphasis added).

The Court finds that working, functional copies of the websites/webpages at issue go to the very heart of this case. It is appropriate for Plaintiff to be able to review the websites as a consumer would have done so. Defendants are instructed

7

to provide Plaintiffs with fully functional copies of the websites. The issue of preservation is, however, premature absent a showing that Defendants no longer have the ability to provide the websites/webpages.

      **IT IS THEREFORE ORDERED** that Plaintiffs' Motion Regarding the ESI Protocol (Doc. 119) is **GRANTED in part** and **DENIED in part** while Defendants' Second Motion to Adopt ESI Protocol (Doc. 122) is **GRANTED in part** and **DENIED in part**, as set forth more fully above.

      **IT IS SO ORDERED.**

      Dated at Wichita, Kansas, on this 16th day of June, 2017.

                             S/ KENNETH G. GALE
                            KENNETH G. GALE
                            United States Magistrate Judge